
DA 07-0344

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 152N

IN RE THE MARRIAGE OF
TED GREGORY McNEA,

      Petitioner and Appellee,

  v.

PAULA JEAN MILLER,

      Respondent and Appellant.

| | |
|---|---|
| APPEAL FROM: | District Court of the Thirteenth Judicial District,<br>In and For the County of Yellowstone, Cause No. DR 06-518<br>Honorable Gregory R. Todd, Presiding Judge |

COUNSEL OF RECORD:

      For Appellant:

            James Donald McKenna, Walsh & McKenna, Bozeman, MT

      For Appellee:

            James C. Reuss, Guthels, Hunnes, Reuss & Thompson, PC,
            Billings, MT

                                    Submitted on Briefs:  March 19, 2008

                                            Decided:  April 29, 2008

Filed:

                                    Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result in this Court=s quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Appellant Paula Jean Miller (Miller) appeals an order of the Thirteenth Judicial District Court, Yellowstone County, granting Appellee Ted Gregory McNea's (McNea) motion to dismiss Miller's Motion for Release of Account Information, which sought information regarding certain retirement and investment accounts owned or formerly owned by McNea. We affirm.

¶3 Miller raises the following issue on appeal:

¶4 Did the District Court err when it held that Miller's 2002 Motion for Release of Account Information, which pertained to her 1994 dissolution, was not an "action" to enforce a judgment, and thus Miller's 2006 Motion for Release of Account Information was barred by the ten-year statute of limitations?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 McNea and Miller received a decree of dissolution of their marriage from the District Court on December 30, 1994. The decree approved a Property Settlement Agreement which included a provision for the distribution to Miller of 50 percent of McNea's I.R.A. and 401K retirement accounts, then totaling approximately $43,000. Following the dissolution, Miller did not take any action to enforce distribution of the

2

retirement accounts until October 8, 2002, when she filed a Motion for Release of Account Information. Neither McNea nor the District Court responded to that motion, and no further action occurred thereafter until May 16, 2006, when Miller filed another Motion for Release of Account Information. Once again, no action occurred in response to this motion, and on December 16, 2006, Miller filed a Request for Order on Motion, or Hearing, and Attorney Fees with the District Court. On January 2, 2007, McNea filed a Motion to Dismiss Miller's motion.

¶6 A hearing was held on the parties' motions on March 8, 2007, at which time the parties agreed the retirement plans in question were "defined contribution plans" and not "defined benefit plans." After limited testimony and argument from both parties, the District Court issued an Order denying Miller's Motion for Release of Account Information and granting McNea's Motion to Dismiss, concluding that Miller's October 2002 motion was more of a discovery document than an "action" on a judgment (or in this case, a divorce decree), and therefore did not toll the ten-year statute of limitations. As such, Miller's May 2006 motion was time-barred as filed beyond the ten year statutory period. Miller appeals.

## STANDARD OF REVIEW

¶7 The facts in this case are not disputed. We review a district court's conclusions of law to determine whether the district court's interpretation and application of the law are correct. *Marriage of Weber*, 2004 MT 206, ¶ 14, 322 Mont. 324, ¶ 14, 95 P.3d 694, ¶ 14.

## DISCUSSION

3

**¶8 Did the District Court err when it held that Miller's 2002 Motion for Release of Account Information, which pertained to her 1994 dissolution from McNea, was not an "action" to enforce a judgment, and Miller's 2006 Motion for Release of Account Information was barred by the ten-year statute of limitations?**

¶9 Section 27-2-201(1), MCA, provides, in pertinent part, that "the period prescribed for the commencement of an action upon a judgment or decree of any court of record of . . . any state within the United States is within 10 years." There is no dispute that this statute of limitations applies to the divorce decree issued by the District Court on December 30, 1994. *See e.g. Weber*, ¶¶ 24-28; *In re Marriage of Brown*, 263 Mont. 184, 867 P.2d 381 (1994).

¶10 Section 27-2-101, MCA, further states that "[t]he word 'action,' as used in this chapter, is to be construed . . . as including a special proceeding of a civil nature." Miller argues that the word "action," as it applies to statutes of limitation, was intended "to have a broad rather than restrictive meaning" and should include her 2002 Motion for Release of Account Information. Thus, the question before the District Court was whether Miller's 2002 Motion for Release of Account Information was an "action" or "special proceeding of a civil nature" commenced prior to the expiration of the ten-year statute of limitations. Notably, Miller's 2006 motion was filed more than eleven years after the parties' dissolution decree was issued.

¶11 The District Court concluded that Miller's 2002 motion was not an "action" for purposes of § 27-2-201(1), MCA, because Miller's motion fell "more under the category of [a] discovery [device], rather than an action on a judgment . . . . Miller is requesting a release of account information. This is quite different than requesting a QDRO or

4

requesting the Court enforce the Final Decree entered into on December 30, 1994." The District Court also concluded that the period of limitation began to run on December 30, 1994, because Miller was entitled to her portion of McNea's retirement accounts immediately upon issuance of the divorce decree. The District Court's conclusion was based on the fact that the retirement accounts were "defined contribution plans," so Miller "could have immediately obtained her portion(s) of the funds that were available in the certain retirement accounts at issue at any time following the dissolution of marriage."

¶12 The record before this Court does not include Miller's 2002 Motion for Release of Account Information. The absence of the 2002 motion makes it very difficult for us to determine whether there was error in the granting of McNea's Motion to Dismiss, as Miller has essentially failed to prove the content of that motion. The only other evidence of the content of Miller's 2002 motion is a passing reference in the hearing transcript stating that the 2002 motion was "virtually identical" to the subsequently filed 2006 Motion for Release of Account Information. However, even if we look to the 2006 motion for evidence of the content of the 2002 motion, the 2006 motion also fails to establish that it sought anything other than information. The only reference to Miller's desire to enforce the 1994 decree is a statement that "[Miller] has attempted to obtain from [McNea] information necessary to prepare a QDRO for the Court's consideration. [Miller] has not been fully successful in this endeavor." Assuming arguendo that the 2006 motion is in fact "virtually identical" to the 2002 Motion for Release of Account Information, we agree with the District Court that these motions were essentially

5

discovery devices rather than an "action" to enforce the decree of dissolution. Miller's "action" should have been in the form of a request for a QDRO or a request for enforcement of the decree.

¶13 Alternatively, Miller argues that she would not be entitled to receive her share of the assets held by McNea's retirement accounts—which the parties agree are "defined contribution plans"—until McNea retired, and therefore the period of limitations did not begin running at the time of her dissolution because McNea was not retired at that time. Miller argues our holding in *Marriage of Weber* dictates that, "[b]ecause the assets in question are retirement plans, Miller is not entitled to received the assets until McNea retires, or at some other future date of eligibility." Miller thus reasons that the statute of limitations does not begin to run until that date of eligibility.

¶14 However, we agree with the District Court that, with respect to Miller's entitlement to a percentage of McNea's retirement, the ten-year statute of limitations began to run on December 30, 1994—the date the decree of dissolution was issued. Whereas the retirement account at issue in *Marriage of Weber* was a Civil Service Retirement System pension, and thus was a "defined *benefit* plan" that could not be collected until the spouse earning those benefits had retired, *Marriage of Weber*, ¶ 27, here the "defined *contribution* plans" were available immediately following the dissolution, because the value of such plans was not dependent on McNea's retirement, but rather could be calculated immediately and the funds withdrawn at any time. Accordingly, and unfortunately, the ten-year period of limitations began to run on December 30, 1994, and expired prior to Miller taking any "action" to enforce the decree.

6

¶15     Affirmed.


                                        /S/ JIM RICE


We concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON
/S/ BRIAN MORRIS